Hall, J.
It is said in this case, in argument for the defendant, that before the revolution, it was the practice of the courts of Equity upon granting injunctions after verdict, to direct bond with security, to be taken for the amount of the sum for which the injunction was granted ; and that this practice was substituted in the room of the practice in England, which, in such cases, directed the money to be paid into Court. The Act of *278 1782 cap. 11, declares that the courts of Equity in this state, shall possess all the powers and authorities, that the courts of Chancery which were formerly held in this State, under the late goverment, exercised ; so that, if such was the practice before the revolution, it was the practice at the time the injunction in question was granted. And the property, seized by the defendant as sheriff, and restored to Walk by him, upon being served with the injunction, stood in the same situation, as if the money for which the injunction was granted, had been directed to be paid into Court.
If the money, which the plaintiff claimed, had been really paid into Court, I see no good reason why the property levied upon, might not have been restored. The belief, that the practice of taking bond &c. as before spoken of, did exist before the revolution, derives some of its support, from the circumstance, that money at that time in this country was not so easily procured as in England, and of course directions to make deposits in Court could not be so easily complied with, and also, from the circumstance, that such a practice has prevailed for some years, at least, since the revolution ; and sheriffs, as far as I have observed, have conformed themselves to this practice.
If there had been a direction to stay the property levied upon, in the hands of the sheriff, perhaps the case might have been different : it is not reduced to a certainty, what the practice in such cases was before revolution. I am glad, however, *279 that this case can be decided, on another ground ; it is not pretended in the case, that the defendant in any respect acted a fraudulent part; he acted as every sheriff has acted in a similar situation, for a considerable time past. The case has been fairly examined by a jury who have found a verdict for the defendant.
Johnston, J.
In England, agreeably to the practice in that country, the sheriff is bound to keep possession of the goods, and may even proceed to sell, which I suppose, in case the goods are of a perishable nature, is the usual practice. It is true, there is no positive law in this country to justify the sheriff in deviating from the practice in England ; but the constant practice in this country, as far as I know, has been, that the sheriff, on being served with the injunction, has in all cases, delivered up the goods to the defendant, and in no one instance occurring to me, has an action been brought against a sheriff for so doing. The cases, where the plaintiff may have suffered a loss as in the present case, must necessarily have taken place ; it is not a matter of surprize, that the sheriff should think himself justified in acting as all others heretofore have done in like cases. In England, there is no positive law in this case, more than in this country ; it depends on the practice of the courts, sanctioned by judicial decisions ; and the only difference is, that though in this country the practice has been uniformly different, it has passed sub silentio, and not sanctioned by a decision *280 of the courts. If this will not justify the sheriff, who acts agreeably to this practice, bona fide, without fraud, collusion or corruption ; it will go great way to excuse, and had, no doubt, great weight with the jury who found in his favor : and this appears to be a hard action, and not to be maintained but on principles stricti juris or on a practice not hitherto in use in this country. I am not disposed to disturb the security which the defendant has in a verdict ; therefore, I am of opinion, that no new trial should be granted.
Macay, J.
What was the practice of the sheriffs in the courts of Chancery under the former government, I know not ; nor have I had it in my power to get any information, except from those gentlemen who had practised in them. The sheriff’s return was “staid by injunction.” It seems, that on obtaining an injunction the complainant always filed his bond in the office ; but this bond was for costs, and whether it was customary for the sheriff to restore the goods he levied on, upon his being served with the injunctions, I cannot say : I have been informed it was not ; and therefore the practice must have begun with the sheriffs under the present court of Equity, to restore the property levied upon, when served with the injunction. If any such practice has ever prevailed, I do not remember it : it could not have been very general, or some case must have come within my observation. There can be no doubt, that under the laws of England, the sheriff might, after he had levied *281 fell the goods notwithstanding an injunction had issued and been served upon him, be could not restore the goods, without making himself liable for their value. The Judges before whom this cause was tried were divided in their opinions. Judge Moore held that the Sheriff, by restoring the goods he had levied upon, made himself liable to the plaintiff for their value. Judge Haywood held that the sheriff had done nothing more than what was justifiable under the practice of the former court of Chancery, as well as the present court of Equity. The jury had the whole matter before them, and have found for the defendant. Either the plaintiff or the defendant must lose the value of goods levied upon, Walk being insolvent. The practice being very doubtful, and this being a case stricti juris, I will not deprive the defendant of the verdict in his favour.
Rule discharged.